IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL VISCOMI,<br>PATRICIA HATCH, and<br>SUSAN KENNEDY, individually and on<br>behalf of all others similarly situated,<br>           Plaintiffs, | CIVIL ACTION |
| v. | NO. 13-4720 |
| CLUBHOUSE DINER,<br>CLUBHOUSE BENSALEM HOLDING,<br>INC.,<br>CLUBHOUSE BENSALEM, LLC,<br>ESAM SALAH, and<br>MEYLINDA ARDHYANI,<br>           Defendants. | |

DuBois, J.                                                March 30, 2016

**M E M O R A N D U M**

## I.     INTRODUCTION

This is a collective action under the Fair Labor Standards Act ("FLSA"). Plaintiffs are waitresses formerly employed by defendant Clubhouse Diner who assert claims individually and on behalf of similarly situated current and former Clubhouse Diner servers. Plaintiffs allege that defendants violated the FLSA by requiring servers to contribute to an unlawful "tip pool," requiring servers to purchase tee shirts and polo shirts out of their tips to cover various expenses, failing to pay servers at a rate of time and one-half for overtime work, failing to provide servers with time cards on certain days, requiring servers to work "off the clock" without pay when waiting on large previously scheduled parties, and docking servers' pay by thirty minutes for arriving to work more than two minutes late.

Presently before the Court is plaintiffs' Motion for Class Certification, which seeks conditional certification of an opt-in FLSA collective action covering all of the claimed FLSA

violations. For the reasons that follow, the Court grants in part and denies in part plaintiffs'
Motion and conditionally certifies a FLSA collective action divided into three subclasses: a tip-
pool subclass, an overtime subclass, and a subclass for plaintiffs who worked off the clock
serving previously scheduled parties or had their pay docked thirty minutes for arriving to work
more than two minutes late. Plaintiffs have not, however, provided sufficient evidence for the
Court to conditionally certify subclasses for plaintiffs' claims that they were required to purchase
shirts out of their tips and that they were not provided time cards "on certain days," and the
Motion is denied with respect to those claims.

## II.     BACKGROUND

### A.  FACTUAL HISTORY

Plaintiffs Carol Viscomi, Patricia Hatch, and Susan Kennedy were formerly employed as
waitresses by defendant Clubhouse Diner. Plaintiffs assert claims against defendants Clubhouse
Diner, Clubhouse Bensalem Holdings, Inc., Clubhouse Bensalem, LLC, Esam Salah, and
Meylinda Ardhyani. Clubhouse Bensalem Holdings, Inc. and Clubhouse Bensalem, LLC
collectively own and operate Clubhouse Diner, which is a restaurant located in Bensalem,
Pennsylvania. Esam Salah is the owner of Clubhouse Diner, and Meylinda Ardhyani is an officer
and managing agent.

As waitresses, plaintiffs were compensated at an hourly rate of $2.83 plus tips. Although
the minimum wage is currently $7.25 per hour, the FLSA permits employers to pay tipped
employees a reduced hourly wage (referred to as a "tip credit").

Plaintiffs allege that they were required to contribute to a "tip pool." Specifically, they
were required to contribute to the tip pool $1.00 per hour worked Monday through Friday, and
$1.50 to $2.00 for each hour worked on weekends and holidays. According to plaintiffs,

defendants took a share of the tip pool money for themselves, and used the tip pool to compensate employees who are not conventionally tipped—including employees who performed gardening, janitorial, and dishwashing duties.

Plaintiffs argue that utilizing an unlawful tip pool forfeits the restaurant's ability to benefit from any tip credit. Accordingly, plaintiffs aver that they are entitled to compensation at the standard hourly rate applicable to non-tipped employees. Specifically, they claim that they deserved to be compensated at the minimum wage of $7.25 per hour, which would require defendants to pay them an additional $4.42 for each hour worked in addition to the $2.83 hourly rate already paid.

Plaintiffs also claim that they were required to cover certain expenses by buying tee-shirts and polo shirts out of their tips. These expenses include "any broken dinnerware, dishes and/or glasses, . . . bills for customers who walked out without paying for their meal, . . . the difference of any cash shortcomings and/or open or lost checks at the end of a shift as if the customers left without paying despite the fact that the customer had paid for their meal." Pls.' Mot. Ex. 3, ¶ 7.

Plaintiffs also claim that defendants failed to pay waitstaff time and one-half their base pay for overtime work performed in excess of forty hours in a workweek. According to plaintiffs, defendants required waiters and waitresses to clock out after working forty hours in a workweek and then clock back in on "dummy" timecards or the timecards of other employees. Consequently, plaintiffs allege that they were not properly compensated for overtime work performed.

Finally, plaintiffs allege that they were not paid at all for certain time worked. Specifically, they claim that they were not provided time cards on "certain days," they were not

permitted to clock in or earn tips when waiting on a large previously scheduled party, and that

they were docked thirty minutes of time if they arrived more than two minutes late.

### B.  PROCEDURAL HISTORY

This case has an unusual procedural history due to an ongoing criminal investigation into

defendants' business, which caused delay in this civil action.

Plaintiffs filed their Complaint on August 14, 2013. Defendants filed their Answer on

October 1, 2013, after the parties stipulated to, and the Court approved, an extension of time. On

November 7, 2013, defendants filed a Motion for Stay of Proceedings. In the Motion defendants

stated that "[o]n or about November 18, 2012, agents from the Internal Revenue Service

Criminal Investigation Division executed a search warrant upon defendant, Clubhouse Bensalem

Holding, Inc. t/a Clubhouse Diner," and seized defendants' financial books and records.

Defendants argued that they would be unable to prepare a defense to plaintiffs' claims without

access to their records.

The Court granted defendants' stay motion by Order dated March 11, 2014. In that Order,

because a delay would prejudice the claims of potential opt-in plaintiffs due to the statute of

limitations applicable to collective actions under the FLSA, by agreement of the parties, the

Court tolled the statute of limitations effective November 7, 2013 (the date on which defendants'

Motion for Stay of Proceedings was filed), until 120 days following the *vacatur* of the Stay

Order.

By Order dated June 8, 2015 the Court continued the stay of proceedings to September 8,

2015 (90 days from the date of that Order). Pursuant to the March 11, 2014 Stay Order, the

tolling agreement of the parties continued in effect until 120 days from September 8, 2015—

January 6, 2016.

The Court issued a Scheduling Order dated September 21, 2015 directing, *inter alia*, plaintiffs to submit a motion to certify a FLSA collective action on or before October 23, 2015. That same Order directed defendants to file and serve their response on or before November 20, 2015.

Plaintiffs timely filed their Motion for Class Certification on October 22, 2015. On November 11, 2015, however, defendants filed a petition for an extension of time to respond on the ground that their records were still in the custody of the United States Attorney's Office.[1] Plaintiffs opposed defendants' request, citing concerns about the statute of limitations.

The parties agreed to an amended schedule that would give defendants additional time to respond to the Motion for Class Certification—on or before January 5, 2016. The parties also agreed to toll the statute of limitations until the expiration of the notice period that would follow the Court's ruling on the Motion for Class Certification. The Court approved the parties' agreement for extension of time and further tolling by Order dated November 25, 2015.

Defendants timely filed their response to plaintiffs' Motion for Class Certification on January 5, 2016. That Motion is now fully briefed and ripe for resolution.

## III.    LEGAL STANDARD

Employees may bring a collective action against an employer who they allege violated the FLSA subject to two requirements: the employees must (1) be "similarly situated," and (2) give "written consent." 29 U.S.C. § 216(b).

Courts have adopted a "two-tiered" procedure for analyzing whether opt-in plaintiffs are similarly situated within the meaning of Section 216(b). *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011) *rev'd on other grounds*, 133 S. Ct. 1523 (2013); *see also*

---

[1] As of the date of this Memorandum the criminal investigation is ongoing.

5

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242–43 (3d Cir. 2013); *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). In the first stage, conditional certification, the district court makes a "preliminary inquiry into whether the plaintiff and the proposed group are similarly situated. This inquiry occurs early in the litigation when minimal evidence is available to the court." *Parker v. NutriSystem, Inc.*, No. 08-cv-1508, 2008 WL 4399023, at *1 (E.D. Pa. Sept. 26, 2008). In the second stage, after discovery is complete, the court conducts a "factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action." *Lugo v. Farmer's Pride Inc.*, No. 07-cv-00749, 2008 WL 638237, at *3 (E.D. Pa. Mar. 7, 2008). The second-stage determination "require[s] a higher level of proof than was necessary at the first stage for conditional certification." *Id.*

      This case is currently at the first stage—conditional certification. To succeed on their Motion, named plaintiffs must make a "modest factual showing" that the putative class is similarly situated. *Symczyk*, 656 F.3d at 193. Under this standard a plaintiff must produce some evidence, "beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* (internal quotation marks omitted) (quoting *Smith v. Sovereign Bancorp, Inc.*, No. 03-cv-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003)). This standard is "fairly lenient." *Camesi*, 729 F.3d at 243; *see Parker*, 2008 WL 4399023, at *2 (characterizing the standard as "not automatic" but "extremely lenient"). A modest factual showing "cannot be founded solely on allegations in the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents." *Drummond v. Herr Foods Inc.*, No. 13-cv-5991, 2015 WL 894329, at *2 (E.D. Pa. Mar. 2, 2015) (quoting *Anyere v. Wells Fargo Co.*, No. 09-cv-2769, 2010 WL 1542180, at *2 (N.D. Ill. Apr. 12, 2010)).

The Court does not evaluate the merits of a case when ruling on a motion for conditional certification. *Titchenell v. Apria Healthcare Inc.*, No. 11-cv-563, 2012 WL 3731341, at \*3 (E.D. Pa. Aug. 29, 2012) (DuBois, J.). The sole question is whether plaintiff provides "modest" evidence that the proposed class "consists of similarly situated employees who were collectively 'the victims of a single decision, policy, or plan.'" *Lugo*, 2008 WL 638237, at \*3 (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 (3d Cir. 2007)).

## IV.   DISCUSSION

### A.  CONDITIONAL CERTIFICATION

Plaintiffs have provided sufficient evidence of similarly situated employees to satisfy the "modest factual showing" required for conditional certification. Specifically, plaintiffs have produced three affidavits that provide sufficient evidence of several challenged policies being uniformly applied to all Clubhouse Diner servers. Pls.' Mot. Exs. 3, 4, & 5.

#### 1.  The Alleged Policies

The Court grants in part plaintiffs' Motion and conditionally certifies a collective action on the ground that plaintiffs' affidavits provide sufficient evidence that Clubhouse Diner servers were uniformly subjected to three alleged FLSA violations: mandatory participation in an unlawful tip pool, preventing servers from logging overtime hours, and failing to pay servers for all hours worked—either by requiring them to work "off the clock" during previously scheduled events, or docking their time thirty minutes for arriving more than two minutes late. The Court addresses each claim in turn. The Motion is denied to the extent it seeks certification of a collective action as to the shirt purchasing claim and the claim that plaintiffs were not provided time cards "on certain days."

First, the affiants attest to the existence of a mandatory tip-pool policy. Servers were required to submit $1.00 per hour on Monday through Friday, and $1.50 to $2.00 for each hour worked on a weekend or holiday. *See, e.g.*, Pls.' Mot. Ex. 3, ¶ 3. The affiants state that there was no notification regarding this policy. *Id.* ¶ 5. The affidavits also state that defendants retained a share of the pooled funds for themselves, and used tip-pool funds to compensate employees who do not customarily receive tips—specifically, individuals who "performed gardening and janitorial, dishwashing, and other non-customer related duties." *Id.* ¶ 6.

Second, the affidavits describe a policy of withholding overtime compensation from servers. Defendants "would require [the affiants] to clock out prior to working forty (40) hours in a week, and would require [the affiants] to switch to a clock in on dummy timecards as other employees . . . ." *Id.* ¶ 9.

Finally, the affiants state that defendants maintained a policy of not paying servers for certain hours worked. Specifically, defendants "would not permit [the affiants] to clock in or earn tips when waiting on a large previously scheduled party, . . . and would dock [the affiants'] time thirty (30) minutes" for clocking in "more than two (2) minutes late." *Id.* ¶ 9.

## 2.   Commonality of the Policies

Plaintiffs must provide evidence that potential members of a collective action were "the victims of a single decision, policy, or plan." *Lugo*, 2008 WL 638237, at *3 (quoting *Ruehl*, 500 F.3d at 388). Plaintiffs have met that burden as to each of the policies described above because their affidavits state that those policies "were uniformly applied to all waiters and waitresses at the Clubhouse Diner." *See, e.g.*, Pls.' Mot. Ex. 3, ¶ 6, 12.

Although defendants insist that plaintiffs' affidavits are speculative, the Court concludes that they go "beyond pure speculation . . . ." *Symczyk*, 656 F.3d at 193. They are based on the

affiants' "personal observation" and "experience, including discussions with many other wait staff . . . ." *See, e.g.*, Pls.' Br. Ex. 3, ¶ 12.

Courts "routinely certify[ ] conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices." *Yap v. Mooncake Foods, Inc.*, No. 13-cv-6534, 2015 WL 7308660, at *7 (S.D.N.Y. Nov. 18, 2015) (quoting *Guo Qing Wang v. H.B. Rest. Grp., Inc.*, No. 14-cv-813, 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014)); *see also, e.g.*, *Brown v. On the Go Transp., Inc.*, No. 10-cv-0371, 2010 WL 9532283, at *2 (D.D.C. Aug. 9, 2010). Plaintiffs submitted three such affidavits in support of their Motion, and the Court concludes that this evidence is sufficient to establish the required "modest factual showing" that the alleged policies were uniformly applied to potential opt-in plaintiffs.

Defendants argue that conditional certification should be denied because plaintiffs' affidavits are unreliable. For example, defendants assert that "plaintiffs have offered absolutely no factual basis that defendants engaged in any improper distributing or misappropriating of the tip pool proceeds, other than their belief." Defs.' Br. at 7; *see also id.* at 6 ("[T]here is absolutely no evidence that any other employees were required to work overtime off the clock as claimed by [plaintiffs] . . . ."). As defendants state, they "[do] not deny" the existence of a tip-pool policy, but "[do] deny that these funds were kept by the defendants." Defs.' Br. at 3.

Defendants' arguments address the *merits* of plaintiffs' claims, not the *commonality* of the alleged policies. Evidence of wrongdoing will ordinarily be sparse at the conditional-certification stage because discovery is not complete, and "[t]his inquiry occurs early in the litigation when minimal evidence is available to the court." *Parker*, 2008 WL 4399023, at *1. To the extent that defendants "invite[ ] the Court to evaluate the credibility of [the affiants] or the

9

merits of their claims, it is more properly considered at the second stage of the certification inquiry or on a motion for summary judgment." *Titchenell*, 2011 WL 5428559, at *6.

Defendants also provide an affidavit signed by defendant Esam Salah, the president of Clubhouse Bensalem Holding, Inc. and the owner and operator of Clubhouse Diner. His affidavit states, *inter alia*, that Clubhouse Diner utilized a "voluntary" tip-pool policy, the pooled money was never misappropriated, and "[a]ny employee who worked over 40 hours was paid overtime." Defs.' Br. Ex. A. However, the Court concludes that plaintiffs' affidavits "successfully engage defendants' affidavit[ ] to the contrary." *Kubiak v. S.W. Cowboy, Inc.*, No. 312-cv-1306, 2014 WL 2625181, at *8 (M.D. Fla. June 12, 2014). Plaintiffs' affidavits state that the tip-pool payments "were not voluntary or optional[,]" and that each of the allegedly illegal policies was "uniformly applied to all waiters and waitresses at the Clubhouse Diner." *See, e.g.*, Pls.' Mot. Ex. 3, ¶¶ 3, 9.

The Court concludes that plaintiffs' affidavits supply the "modest factual showing" required for conditional certification as to the tip pool, overtime, and unpaid hourly work policies. The evidence indicates that these policies were uniformly applied to Clubhouse Diner waitstaff, making it appropriate to disseminate notice to all waitstaff employed by defendants within the relevant time period. "Should facts develop suggesting that any opt-in plaintiffs are not similarly situated, defendants may move for decertification at that time." *Yap*, No. 13-cv-6534, 2015 WL 7308660, at *7 (S.D.N.Y. Nov. 18, 2015) (quoting *Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12-cv-75, 2013 WL 208909, at *2 (S.D.N.Y. Jan. 10, 2013)).

### 3. Other Policies

Plaintiffs' affidavits also state that servers were obligated to buy tee shirts and polo shirts out of their tips to cover certain expenses, and that, generally, servers were not provided with a

time card to clock in "on certain days." Plaintiffs have not made a modest factual showing that these claims can serve as the basis of a collective action because these alleged policies were administered in a necessarily individualized, *ad hoc* manner.

Plaintiffs attest that they were required to purchase different types of shirts for unstated amounts, to cover a litany of possible expenses—including unpaid bills, broken dinnerware, dishes, glasses, and/or lost checks. Pls.' Mot. Ex. 3, ¶ 7. Plaintiffs' statements as to the alleged shirt purchasing policy are insufficient to demonstrate that the claims go beyond "specific circumstances personal to the plaintiff . . . ." *Bramble v. Wal-Mart Stores, Inc.*, No. 09-cv-4932, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011). Conditional certification would not fulfill "the economy of scale envisioned by the FLSA collective action procedure[.]" *Id.* at *6.

The same is true of plaintiffs' allegation that they were not "provide[d] . . . with a time card to clock in on certain days . . . ." *Id.* ¶ 9. In contrast to the claim that they were required to work off the clock during large previously scheduled parties, plaintiffs have not provided specific information from which the Court could conclude that putative class members were the victims of "a single decision, policy, or plan." *Lugo*, 2008 WL 638237, at *3.

### 4. Liability Period

Plaintiffs seek to certify a collective of servers, waiters, and waitresses who worked at Clubhouse Diner "during any workweek from August 14, 2010 to the present." This proposed class definition misstates the applicable liability period for opt-in plaintiffs. As set forth below, the liability period begins three years from the date of tolling, November 7, 2013—that is, November 7, 2010.

11

The applicable statute of limitations is three years for a willful violation, two years otherwise.[2] 29 U.S.C. § 255(a). But in a FLSA collective action, unlike a Rule 23 class action, the filing of plaintiffs' Complaint does not toll the statute of limitations for all potential members of the collective. 7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1807, at 476 (3d ed. 2005). The statute of limitations continues to run for potential members until they affirmatively opt in. *Symczyk*, 656 F.3d at 200; *see also In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-cv-6820, 2013 WL 2434611, at *3 (E.D. Pa. June 5, 2013) ("Once the signed consents are filed with the Court, they do not 'relate back' to the filing date of the Consolidated Complaint.").

The liability period for opt-in plaintiffs begins three years prior to the date of tolling. Ordinarily that is the date on which an opt-in plaintiff consents in writing to join the collective action. In this case, however, the statute of limitations was tolled by agreement of the parties beginning on November 7, 2013. Order dated March 11, 2014; *see In re Chickie's & Pete's Wage & Hour Litig.*, 2013 WL 2434611, at *3 n.2 ("A stay can toll the statute of limitations by agreement of the parties."). That tolling agreement has remained in effect continually throughout this litigation, and will remain in effect until the completion of the notice period. *See* Order dated November 25, 2015. But between August 14, 2013 when named plaintiffs filed their Complaint, and November 7, 2013, when the tolling agreement took effect, the statute of limitations continued to run for prospective opt-in plaintiffs.

The applicable liability period for opt-in plaintiffs begins three years prior to November 7, 2013 and extends through the tolling period. Notice of this collective action must therefore be

---

[2] The Court concludes that, for the purposes of conditional certification only, plaintiffs have adequately pled the existence of willful violations. The Court's decision is without prejudice to defendant's right to raise the issue of willfulness later in the proceedings.

12

disseminated to all servers, waiters, or waitresses employed by defendants on or after November 7, 2010.

### 5.   Certification of Three Subclasses

The Court concludes that conditionally certifying three subclasses best serves the interests of judicial efficiency.

"Division into subclasses is a common technique to assist in resolution of an FLSA collective action." *Lugo*, 2010 WL 5060994, at *3. In *Castillo v. Morales, Inc.*, for example, the plaintiff raised similar allegations to those in this case, and the Court granted conditional certification to three subclasses:

> (1) hourly employees at any of the eight Defendant restaurant locations, who were not paid overtime; (2) tipped employees who worked for Defendants Morales, Inc., Jalisco, Inc., or Cazadores Corp. and participated in a tip pool where an owner, manager, or employer also participated; and (3) hourly server employees who worked for Defendant Morales, Inc. "off the clock" without compensation.

302 F.R.D. 480, 484 (S.D. Ohio 2014). Similarly, in *Stewart v. CUS Nashville, LLC et al.*, the Court conditionally certified two subclasses: a tip-pool subclass, and a second subclass that included claims for both off-the-clock and overtime work. No. 11-cv-342 (M.D. Tenn. Feb. 13, 2012); *see also Dinkel v. MedStar Health*, Inc., 880 F. Supp. 2d 49, 58–59 (D.D.C. 2012) (granting conditional certification as to separate groups of plaintiffs for a meal-break claim and a uniform-maintenance claim).

The Court notes that this is not a unanimous practice. *See, e.g.*, *Veres-Pop v. Sistina Rest.*, No. 13-cv-2360, 2013 WL 4082872, at *2 (S.D.N.Y. Aug. 8, 2013); *Flowers v. MGTI, LLC*, No. 11-cv-1235, 2012 WL 1941755, at *1 (S.D. Tex. May 29, 2012). However, courts have considerable flexibility in administering a FLSA collective action. *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989). After considering all such authority, the Court

concludes that efficient administration of this case is best served by conditionally certifying a collective action divided into three subclasses, as follows:

> (1) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were required to contribute their tips to a "tip pool" from which defendants retained a share for themselves, and/or paid employees not customarily entitled to tips.
>
> (2) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were not paid overtime wages for work performed in excess of forty (40) hours in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are/were employed.
>
> (3) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were not paid for all time worked, either because they were not permitted to clock in or earn tips when waiting on large previously scheduled parties, or were docked thirty (30) minutes of pay after clocking in more than two (2) minutes late.

## B.  FORM OF PROPOSED NOTICE & CONSENT FORMS

The Supreme Court of the United States has held that "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated" grants a district court the "requisite procedural authority to manage the process of joining multiple parties" in an orderly and sensible manner. *Sperling*, 493 U.S. at 170. Thus, district courts have "discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Id.* at 169. "[O]nce a[ ] [FLSA] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 171. Pursuant to its responsibility to manage the case, the Court now addresses several issues raised by plaintiffs' proposed notice and consent forms.

### 1.  Defendants' Objections

Plaintiffs attached a proposed opt-in notice as Exhibit 1 to their Motion for Class Certification. In their Response defendants request several modifications to the proposed notice. At a telephone conference on February 17, 2016, the Court ruled on many of those requests. As set forth in the accompanying Order, the parties are instructed to meet and confer in an effort to resolve all outstanding objections pertaining to the form of notice. The parties shall submit an agreed-upon form of notice to the Court within three weeks that is consistent with this Memorandum and the Court's rulings in that telephone conference.

### 2.  Class Definitions and Notice

As discussed above, the Court has determined that it is in the interest of judicial efficiency to grant conditional certification for three separate subclasses. Plaintiffs shall disseminate one set of notices covering the three subclasses to "All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010." Plaintiffs are instructed to revise their proposed notice and consent forms to include descriptions of the three subclasses that have been conditionally certified. The proposed notice shall also provide that potential plaintiffs may opt into one or more than one subclass, and that only employees who satisfy a subclass definition are eligible to opt in.

## V.    CONCLUSION

The Court grants in part plaintiffs' Motion and conditionally certifies a collective action divided into three subclasses, as follows:

(1) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were required to contribute their tips to a "tip pool" from which defendants retained a share for themselves, and/or paid employees not customarily entitled to tips.

(2) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were not paid overtime wages for work performed in excess of forty (40) hours in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are/were employed.

(3) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were not paid for all time worked, either because they were not permitted to clock in or earn tips when waiting on large previously scheduled parties, or were docked thirty (30) minutes of pay after clocking in more than two (2) minutes late.

The Motion is denied to the extent it seeks certification of a collective action as to the shirt purchasing claim and the claim that plaintiffs were not provided time cards "on certain days." The Court further concludes that it is appropriate to disseminate notice of this collective action to all current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010. The Court defers ruling on the size and scope of any subclass until discovery is complete and the issue of final certification is before the Court.

An appropriate order follows.