IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL VISCOMI,<br>PATRICIA HATCH, and<br>SUSAN KENNEDY, individually and on<br>behalf of all others similarly situated,<br>   Plaintiffs,<br><br>   v.<br><br>CLUBHOUSE DINER,<br>CLUBHOUSE BENSALEM HOLDING,<br>INC.,<br>CLUBHOUSE BENSALEM, LLC,<br>ESAM SALAH, and<br>MEYLINDA ARDHYANI,<br>   Defendants. | CIVIL ACTION<br><br><br><br>NO. 13-4720 |

DuBois, J.                                February 1, 2019

**M E M O R A N D U M**

**I.  INTRODUCTION**

Plaintiffs Carol Viscomi, Patricia Hatch, and Susan Kennedy brought this action on behalf of themselves and all others similarly situated against defendants Clubhouse Diner, Clubhouse Bensalem Holding, Inc., Clubhouse Bensalem, LLC, Esam Salah and Meylinda Ardhyani, alleging wage violations and unlawful compensation practices under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. § 333.101 *et seq.* ("PMWA"); and the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1, *et seq.* ("WPCL").

Presently before the Court is Plaintiffs' Motion To Compel and for Sanctions (Document No. 80, filed October 4, 2018). For the reasons that follow, the Court denies that part of the Motion which asks that the Court (1) enter a default judgment for plaintiffs, (2) strike defendants' affirmative defenses, and (3) determine as a matter of fact that defendants operated an illegal tip pool. The Court grants that part of the Motion which asks that the Court (1) find

1

defendant Esam Salah in civil contempt for his failure to answer appropriate questions related to his cash payroll practices as ordered by the Court and direct Salah to submit to a deposition and answer all appropriate questions related to defendants' cash payroll practices during the class period; and (2) direct Salah to pay plaintiffs' attorney's fees incurred in connection with preparation of the motion for sanctions.

## II. BACKGROUND[1]

### A. FACTUAL HISTORY

Plaintiffs Carol Viscomi, Patricia Hatch, and Susan Kennedy were formerly employed as waitresses by defendant Clubhouse Diner. Plaintiffs assert claims against defendants Clubhouse Diner, Clubhouse Bensalem Holdings, Inc., Clubhouse Bensalem, LLC, Esam Salah, and Meylinda Ardhyani. Clubhouse Bensalem Holdings, Inc. and Clubhouse Bensalem, LLC collectively own and operate Clubhouse Diner, which is a restaurant located in Bensalem, Pennsylvania. Esam Salah is the owner of Clubhouse Diner, and Meylinda Ardhyani is an officer and managing agent.

As waitresses, plaintiffs were compensated at an hourly rate of $2.83 plus tips. Although the minimum wage is currently $7.25 per hour, the FLSA permits employers to pay tipped employees a reduced hourly wage (referred to as a "tip credit").

Plaintiffs allege that they were required to contribute to a "tip pool." According to plaintiffs, defendants took a share of the tip pool money for themselves and used the tip pool to compensate employees who are not conventionally tipped—including employees who performed gardening, janitorial, and dishwashing duties.

---

[1] In this Memorandum, the Court includes only those facts necessary to explain its decision. Unless otherwise cited, all facts are adopted from the Court's Memorandum granting in part plaintiffs' Motion for Class Certification and conditionally certifying an opt-in FLSA collection action (Document No. 31, filed March 31, 2016).

Plaintiffs argue that utilizing an unlawful tip pool forfeits the restaurant's ability to benefit from any tip credit. Accordingly, plaintiffs claim that they are entitled to compensation at the standard hourly rate applicable to non-tipped employees—the minimum wage of $7.25 per hour. That would require defendants to pay them $4.42 for each hour worked in addition to the $2.83 hourly rate already paid.

### B.    PROCEDURAL HISTORY

This case has an unusual procedural history due to a parallel criminal investigation into defendants' business, which led to an indictment and caused delays in this civil action.

Plaintiffs filed their Complaint on August 14, 2013. Defendants filed their Answer on October 1, 2013, after the parties stipulated to, and the Court approved, an extension of time. On November 7, 2013, defendants filed a Motion for Stay of Proceedings. In the Motion, defendants stated that "[o]n or about November 18, 2012, agents from the Internal Revenue Service Criminal Investigation Division executed a search warrant upon defendant, Clubhouse Bensalem Holding, Inc. t/a Clubhouse Diner," and seized defendants' financial books and records. Defendants argued that they would be unable to prepare a defense to plaintiffs' claims without access to their records. The Court granted defendants' stay motion by Order dated March 11, 2014. The case remained stayed until September 21, 2015.

By Memorandum and Order dated March 31, 2016, the Court granted conditional certification to an FLSA collective action with three subclasses.[2] The parties then began

---

[2] The Court conditionally certified the following FLSA sub-classes:
    (1) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were required to contribute their tips to a "tip pool" from which defendants retained a share for themselves, and/or paid employees not customarily entitled to tips.
    (2) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were not paid overtime wages for work

discovery, which led to the conduct for which plaintiffs filed their Motion To Compel and for Sanctions.

On April 28, 2017, defendant Esam Salah was charged by way of Information with one count of tax evasion, in part for failing to report approximately $1,329,306.72 received by defendant Clubhouse Diner in cash income used for employee wages. *United States v. Esam Salah*, Criminal Action No. 17-232. By Order dated May 15, 2017, at defendants' request, the Court directed that Salah's deposition be deferred until after his sentencing in the related criminal case. The Court granted this deferral because defense counsel argued that Salah would be required to assert his Fifth Amendment privilege during his deposition, giving rise to an inference of guilt, if he was deposed before he was sentenced in the related criminal proceeding.

On August 17, 2017, plaintiffs' counsel sent a letter to the Court asserting that "Defendants are withholding discoverable information related to their practice of paying staff in cash" through inappropriate objections to Plaintiffs' Second Set of Interrogatories (Document Nos. 74 & 75). The letter also raised the concern that defendants "will withhold relevant and responsive documents based on the objections that information related to their paying staff in cash is not discoverable" (Document No. 75). By Order dated August 29, 2017, the Court overruled defendants' objections and directed that "defendants shall provide plaintiffs with

---

performed in excess of forty (40) hours in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are/were employed.
(3) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were not paid for all time worked, either because they were not permitted to clock in or earn tips when waiting on large previously scheduled parties, or were docked thirty (30) minutes of pay after clocking in more than two (2) minutes late.

copies of all requested documents seized by the Government from the defendants in the related criminal case."[3]

Salah was sentenced in the criminal case on March 28, 2018. On May 18, 2018, two months later, Salah appeared at a Rule 30(b)(6) deposition "on behalf of the Clubhouse." Mem. Mot. Compel & Sanctions 2. "Salah was unprepared for this deposition, refused to answer questions about the Clubhouse's cash payroll that led to Salah's conviction for tax fraud and asked to continue his deposition due to illness." *Id*.

By letter dated July 24, 2018, plaintiffs' counsel informed the Court that "Mr. Salah, who was designated as the corporate representative, was instructed not to testify as to how he operated the 'cash' payments by which he was convicted of tax evasion." By Order dated July 25, 2018, the Court ruled that questions related to "how [Salah] operated the 'cash' payments [for] which he was convicted of tax evasion are appropriate," and "Mr. Salah shall provide responsive answers to all appropriate questions on that subject."

When Salah's deposition was continued on September 25, 2018, he "was read the text of the Court's [July 25, 2018 Order]." Mem. Mot. Compel & Sanctions 12. However, he "refused to answer any questions related to his cash payroll practice for the years 2010 through 2012." Mem. Mot. Compel & Sanctions 3. When plaintiffs' counsel, Edward Murphy, asked Salah about his cash payments to his staff, the following exchange took place:

> **Q.** [W]here was the cash coming from that was being paid to the staff under the table or off the books?
> **A.** Again, stay with your case. This is another lawyer firm and it's an IRS case. I am not allowed to talk about it and I'm not going to talk about it.
> **Q.** You're not allowed to talk about it?

---

[3] In their motion, plaintiffs do not aver any noncompliance with the order to "provide plaintiffs with copies of all requested documents seized by the Government from the defendants in the related criminal case." Mem. Mot. Compel & Sanctions 9 n.4, 13.

> **A.** Your case is the tip pool. Stay with your tip pool. You're not going to get an answer more than that. That way you don't waste your time.
> **Q.** That's fine. We'll have a letter off to the judge this afternoon.
> **A.** You do whatever you want to do.
> **Q.** And we'll be seeking sanctions.
> **A.** You're wasting time. You need to move on.

Salah's Deposition of September 25, 2018 ("Salah Sept. Dep.") 209:5–22. "After Salah's continued refusal to answer questions addressed to where Salah obtained the cash to pay staff, Salah's counsel, [John Innelli,] clarified that he was not directing Salah not to answer questions and that he was doing it on his own." Mem. Mot. Compel & Sanctions 2.

> **Q.** In terms of the tax returns from 2010 to 2013 that I showed you and the cash book that I showed you, it's your position that you're not going to testify to that, correct?
> **MR. INNELLI**: Yes, that's the position he is taking.
> **MR. MURPHY**: Mr. Innelli, are you taking that position and directing him not to answer those questions?
> **MR. INNELLI**: No. He has a justified reason for it. He has expressed that to me and to his counsel, and I am sure that his counsel in the other matter will be able to give you a better explanation than I.
> **MR. MURPHY**: In terms of the court's fifth amended scheduling order, it's our position that Mr. Salah is now in contempt of that order. Have you had a discussion with your client about contempt of a court order and sanctions that are possible related to not answering questions that have been directed by the court to be answered?
> **MR. INNELLI**: In reference to the last response I gave you, I think that indicates that it's not willful and it's not contemptive. We can have a separate conversation among counsel, and that would guide, I think, what action you would take with the judge.

Salah Sept. Dep. 275:14–276:18.

On October 4, 2018, plaintiffs filed the Motion to Compel and for Sanctions. Defendants' response was due on October 18, 2018. After the Court contacted defense counsel on November 1, 2018, with respect to whether defendants intended to respond, defendants requested an extension of time to November 8, 2018, to which plaintiffs objected. On November 13, 2018, defendants filed a Response. On November 15, 2018, plaintiffs filed a Reply.

In their pending motion, plaintiffs argue that Salah's conduct violated multiple court orders and ask the Court to impose sanctions against Salah pursuant to Federal Rule of Civil

Procedure 37(b)(2)(A) and to compel Salah to answer questions about his cash payroll practices during the class period. The motion is ripe for decision.

## III. APPLICABLE LAW

Under Federal Rule of Civil Procedure 37(b)(2)(A), if a party "fails to obey an order to provide or permit discovery," the Court may sanction the noncompliant party through any one of the following means:

> (i) Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) Striking pleadings in whole or in part;
> (iv) Staying further proceedings until the order is obeyed;
> (v) Dismissing the action or proceeding in whole or in part;
> (vi) Rendering a default judgment against the disobedient party; or
> (vii) Treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). "[I]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The choice of the appropriate sanction generally is committed to the sound discretion of the district court. *Mangano v. American Radiator & Standard Sanitary Corp.*, 438 F.2d 1187 (3d Cir. 1971). However, the court's discretion is not without bounds. Rule 37(b)(2) contains two standards—one general and one specific—that limit the district court's discretion. Any sanction must be "just," and the sanction must be specifically related to the particular "claim," which was at issue in the order to provide discovery. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). When a district court contemplates imposing case-dispositive sanctions under Rule 37, it must weigh the following factors:

7

(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Bortex Indus. Co. v. Fiber Optic Designs, Inc.*, 296 F.R.D. 373, 383 (E.D. Pa. 2013) (citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)).

## IV. DISCUSSION

Plaintiffs contend that sanctions against Salah are appropriate under Federal Rule of Civil Procedure 37(b)(2)(A) for his failure to comply with multiple court orders. Plaintiffs also argue that their motion should be considered unopposed, as defendants failed to file a timely response to plaintiffs' motion.

For the reasons that follow, the Court has decided to consider defendants' untimely response to plaintiffs' motion. Upon consideration of parties' submissions, the Court concludes that Salah's conduct during his September 25, 2018 deposition violated Rule 37(b)(2)(A) and that the sanctions of (1) finding Salah in contempt of court for failure to respond to relevant questions at his September 25, 2018 deposition as ordered by the Court and (2) an award of attorney's fees are appropriate.

### a. Defendants' Untimely Response to the Motion To Compel and for Sanctions

Plaintiffs contend that the Court should grant their Motion To Compel and for Sanctions as uncontested because defendants failed to file a timely response. The Court declines to do so.

Local Rule of Civil Procedure 7.1(c) for the United States District Court for the Eastern District of Pennsylvania provides the Court with the discretion to grant a motion as uncontested "[i]n the absence of a timely response." Defendants' response to plaintiffs' motion was due on October 18, 2018. They filed their response nearly one month late, on November 13, 2018.

8

Nevertheless, the Court exercises its discretion and will consider defendants' untimely response in deciding the pending motion.

### b. Salah's Noncompliance with Discovery Orders

In their motion, plaintiffs argue that Salah failed to obey two discovery orders through his refusal to testify at his September 25, 2018 deposition.[4] First, plaintiffs assert that Salah's conduct knowingly violated the Court's July 25, 2018 Order directing him to provide responsive answers to deposition questions related to "how he operated the 'cash' payments by which he was convicted of tax evasion." Second, plaintiffs contend that Salah's refusal to testify disregarded the Court's August 29, 2017 Order which overruled defendants' objection that plaintiffs' interrogatory questions about the cash payments to Clubhouse employees were not discoverable. Mem. Mot. Compel & Sanctions 5, 12.

Only Salah's noncompliance with the July 25, 2018 Order provides a basis for sanctions under Rule 37(b)(2)(A). Plaintiffs correctly state that the August 29, 2017 Order stated that documents relating to cash payments were relevant prior to Salah's refusal to testify on that subject. However, the August 29, 2017 Order was not a "direct order" compelling testimony from Salah as required for sanctions under Rule 37(b). *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 302 (3d Cir. 2000) (noting that a "direct order" compelling discovery is a necessary predicate to imposing penalties under Rule 37(b)). Rather, the Court's August 29, 2017 Order only overruled defendants' objections to Plaintiffs' Second Set of Interrogatories and directed the production of "all requested documents seized by the

---

[4] In their motion, plaintiffs also assert that Salah engaged in additional discovery abuses. Mem. Mot. Compel & Sanctions 3. However, plaintiffs bring this motion against Salah pursuant to Rule 37(b)(2)(A), which permits the Court to impose sanctions only after the failure to obey a court order compelling discovery. *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 302 (3d Cir. 2000). Thus, the Court limits its consideration to alleged misconduct where plaintiffs argue that Salah failed to obey a "direct order by the Court" compelling discovery. *Id*.

Government from the defendants in the related criminal case." As such, Salah's refusal to testify on issues related to cash payments did not "fail to obey" the August 29, 2017 Order within the meaning of Rule 37(b) and does not provide a ground for sanctions under Rule 37(b)(2)(A). Accordingly, the Court focuses exclusively on Salah's noncompliance with the July 25, 2018 Order in considering sanctions under Rule 37(b)(2)(A).

Defendants respond that "plaintiffs' counsel did not conduct a deposition consisting of questions but rather one in which he made assertions and attempted to intimidate [Salah] into conceding to the assertion." Defs.' Resp. 3. Plaintiffs deny that any intimidation occurred, and defendants do not identify anything in the record to support their claim of intimidation.

Defendants further assert that "Mr. Salah's agreement with the government removes his liability specifically with regard to cooks and managers only. Confronted with conjecture presented as a 'question' and not wanting to assert a Fifth Amendment privilege which would lead fact finders to infer misconduct when no misconduct may have taken place, Mr. Salah responded as he did." Defs.' Resp. 4. In other words, Salah disregarded the Court's July 25, 2018 Order directing him to answer questions related to his cash payments because he did not want to answer plaintiffs' questions or incur the consequences of asserting his Fifth Amendment privilege. Even assuming that Salah's criminal action did not cover cash payments to all his staff—a proposition that plaintiffs reject—defendants' response is unavailing. *See* Pls.' Reply 8. A party must either choose to assert a privilege or provide responsive answers. *See Pack v. Beyer*, 157 F.R.D. 219, 224 (D.N.J. 1993). Salah's attempt to circumvent his available options by refusing to provide any response to the deposition questions at issue was inappropriate.

Defendants' additional arguments are also unpersuasive. Defendants argue that "Mr. Salah answered all of the questions he understood." Defs.' Resp. 6. However, Salah refused to

10

answer at least some questions not based on a lack of understanding, but because the questions related to his criminal case. *See, e.g.*, Salah Sept. Dep. 209:13–15 ("Your case is the tip pool. Stay with your tip pool. You're not going to get an answer more than that."). Defendants also assert miscellaneous claims including: that members of the plaintiffs' conditionally certified FLSA collective action class have failed to appear at their noticed depositions, that plaintiffs are not qualified to be class representatives, and that plaintiffs' lawsuit was initiated out of "inappropriate motives." Defs.' Resp. 3. The Court need not address these arguments because none of them relate to Salah's noncompliance with the Court's July 25, 2018 Order at his September 25, 2018 deposition—the conduct at issue in plaintiffs' motion.

The Court concludes that Salah refused to answer questions squarely covered by the Court's Order dated July 25, 2018 directing him to provide responsive answers to all appropriate questions related to "how Salah operated the 'cash' payments [for] which he was convicted of tax evasion." For example, when plaintiffs' counsel asked Salah, "[W]here was the cash coming from that was being paid to the staff under the table or off the books?," Salah refused to answer. Salah Sept. Dep. 209:5–7. Instead, Salah told plaintiffs' counsel to "stay with [his] case" and that he was not going to answer plaintiffs' questions. *Id.* at 209:8. When plaintiffs' counsel asked defense counsel whether he was directing Salah to not answer the deposition questions, defense counsel stated on the record that he was not. *Id*. at 275:20–23. While defense counsel stated that Salah "had a justified reason" for refusing to testify, defendants have not provided the Court with any "justified reason" for Salah's refusal to testify. *Id*. at 275:24–276:3. The Court therefore agrees with plaintiffs that Salah's refusal to answer relevant questions related to cash payments did not comply with the Court's July 25, 2018 Order.

Based on Salah's noncompliance with the Order dated July 25, 2018, the Court concludes that Salah "fail[ed] to obey an order to provide or permit discovery." Sanctions are therefore warranted under Federal Rule of Civil Procedure 37(b)(2)(A).

**c. Sanctions**

Plaintiffs argue that a default judgment for plaintiffs is warranted based on Salah's noncompliance with the Court's Orders. In the alternative, plaintiffs request that the Court (1) strike defendants' affirmative defenses, (2) find as a matter of fact that "the Clubhouse operated an illegal tip pool," (3) find Salah in contempt of court and compel Salah to provide responsive answers to all appropriate questions related to his cash payroll practices during the class period, and (4) order Salah to pay plaintiffs' attorney's fees.

In response, defendants argue that a default judgment is inappropriate. The Court agrees, noting that the Third Circuit has "consistently emphasized the extreme nature of a . . . default judgment." *Hewlett v. Davis*, 844 F.2d 109, 113 (3d Cir. 1988) (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984)). Such severe sanctions "must be sanctions of last, not first, resort." *Id*. Instead, "[s]ound judicial policy favors disposition of cases on their merits rather than on procedural defaults." *Id*. Accordingly, on the present state of the record, the Court will not impose a default judgment, strike defendants' affirmative defenses, or establish as a matter of fact that defendants operated an illegal tip pool.[5]

In considering appropriate sanctions, the Court will apply "the least coercive sanction . . . reasonably calculated to win compliance with its orders." *Matter of Grand Jury Impaneled Jan. 21, 1975*, 529 F.2d 543, 551 (3d Cir. 1976). Based on Salah's behavior, the Court deems it appropriate to sanction Salah under Rule 37(b)(2)(A)(vii), by adjudging his refusal to answer

---

[5] Because the Court has decided not to impose case-dispositive sanctions, the Court need not weigh the *Poulis* factors addressed in the parties' briefs.

plaintiffs' questions about his cash payroll practices at his September 25, 2018 deposition as an act of contempt of court. The Court further orders that Salah provide responsive answers to plaintiffs' questions or assert any appropriate Fifth Amendment privilege claim. If Salah fails to comply with this Memorandum and Order, the Court will consider imposition of more severe sanctions. *Id*.

Pursuant to Rule 37(b)(2)(C), the Court further finds that Salah's failure to obey the Court's July 25, 2018 Order was not "substantially justified." As a consequence, the Court orders Salah to pay attorney's fees incurred in connection with preparation of the motion for sanctions. Plaintiffs shall provide the Court with an application for such attorney's fees, detailing hours spent and work performed, within fourteen days.

## V. CONCLUSION

The Court concludes that Salah violated the Court's Order dated July 25, 2018 through his refusal during the September 25, 2018 deposition to answer plaintiffs' questions regarding his cash payroll practices that were the subject of the criminal action. As a consequence, the Court imposes sanctions pursuant to Federal Rules of Civil Procedure 37(b)(2)(A)(vii) & 37(b)(2)(C). Plaintiffs' motion is granted in part and denied in part.

The Court grants that part of the Motion which requests that the Court (1) find defendant Esam Salah in civil contempt for his failure to answer appropriate questions related to his cash payroll practices as ordered by the Court and direct Salah to submit to a deposition and answer all appropriate questions related to defendants' cash payroll practices during the class period; and (2) direct Salah to pay plaintiffs' attorney's fees incurred in connection with the preparation of the motion for sanctions.

The Court denies that part of plaintiffs' Motion which requests that the Court (1) enter a

default judgment in favor of plaintiffs, (2) strike defendants' affirmative defenses, and (3) determine as a matter of fact that defendants operated an illegal tip pool.

      An appropriate order follows.