UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL VISCOMI, PATRICIA HATCH, & SUSAN KENNEDY, individually and on behalf of all others similarly situated,<br>Plaintiffs | :<br>:<br>: CIVIL ACTION NO. 2:13-cv-04720-JD<br>:<br>: |
| v. | : |
| CLUBHOUSE DINER, CLUBHOUSE BENSALEM HOLDING, INC., CLUBHOUSE BENSALEM, LLC, ESAM SALAH & MEYLINDA ARDHYANI,<br>Defendants | :<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS UNOPPOSED MOTION FOR COLLECTIVE ACTION SETTLEMENT APPROVAL**

Carol Viscomi, ("Viscomi"), Patricia Hatch, ("Hatch") and Susan Kennedy, ("Kennedy"), (collectively "Plaintiffs"), hereby file this Memorandum of Law in Support of their Unopposed Motion for Collective Action Settlement Approval. Plaintiffs respectfully request that this Court approve the proposed settlement in the above-captioned matter and dismiss this matter with prejudice.

**I.      INTRODUCTION AND PROCEDURAL BACKGROUND**

This action was brought by Plaintiffs to recover unpaid minimum and overtime wages and all available relief pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, et seq., and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1, et seq. During their employment with Defendants, Plaintiffs allege that they were not compensated properly and/or at minimum wage on account of Defendants' disregard of the requirements of both federal and state wage laws related to Defendants' tip pool which diverted tips belonging to the wait staff. Plaintiffs sought unpaid wages, liquidated damages, pre-judgment and post-judgment

interest, injunctive and declaratory relief against Defendants for Defendants' unlawful actions, and attorneys' fees and costs.

On August 14, 2013, Plaintiffs filed a Class and Collective Action Complaint with this Court in which they detailed Defendants' failure to adhere to various state and federal wage laws for a class of similarly situated waiters and waitresses who were employed by Defendants. (Doc. No. 1). Defendants, who apparently were under investigation by the Internal Revenue Service ("IRS"), answered the Complaint and then, based upon the IRS investigation, filed a Motion to Stay. (See Doc. Nos. 8 & 13). The Court granted Defendants' Motion to Stay on March 11, 2014, (Doc. No. 19), but in doing so the Court tolled the putative class' statute of limitations period. After the stay was lifted in September, 2015, Plaintiffs sought and were granted conditional class certification in connection with their FLSA claims. Specifically, the Court certified the following subclasses:

> (1) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were required to contribute their tips to a "tip pool" from which defendants retained a share for themselves, and/or paid employees not customarily entitled to tips.
>
> (2) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were not paid overtime wages for work performed in excess of forty (40) hours in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are/were employed.
>
> (3) All current and former servers, waiters, and waitresses employed by defendants at any time on or after November 7, 2010, who, during that period, were not paid for all time worked, either because they were not permitted to clock in or earn tips when waiting on large previously scheduled parties, or were docked thirty (30) minutes of pay after clocking in more than two (2) minutes late.

(Doc. No. 32). After the Court conditionally certified a FLSA Collective, the parties engaged in discovery and a number of depositions including the named Plaintiffs, Defendant Salah, Defendant Aryahdani and others were taken.

During discovery, Plaintiffs obtained thousands of pages of records from Defendants as well as hundreds of pages of records from Defendants' payroll company Olympic Payroll. The Olympic Payroll records reflect that from October 30, 2011 through August 18, 2013, Defendants changed the way they paid staff at the Clubhouse. Specifically, the Olympic Payroll records appear to reflect that during that period of time, no tips were paid to any staff despite the fact that the Clubhouse continued to collect tip pool money from its waiters and waitresses. Defendants, however, had no other records for that time frame as the IRS seized them when it raided Defendant Salah's businesses. Ultimately, Plaintiffs were able to obtain certain minimal records from the IRS. These records reflected that Defendants paid a number of staff "off the books" but did not reflect when and if any tips were paid out to staff.

As part of their regular business practice, waitresses and waiters at the Clubhouse, who were only paid $2.83 per hour, were uniformly required to pay Defendants in cash out of their tips one dollar ($1.00) per hour for each hour that they worked Monday through Friday and one dollar and fifty cents ($1.50) to two dollars ($2.00) for each hour they worked on weekends and holidays. Defendants failed to post any notification regarding the tip pool, inform Plaintiffs or any staff of how they would operate this pool or how the tip credit and tip pool would apply and/or provide any explanation of staff's rights under the FLSA. Plaintiffs also allege that Defendants would also take a share of the tip pool money for themselves, would share the tip pool money with individuals who should not have been part of the tip pool and/or were not entitled to tips as they performed gardening, janitorial, dishwashing, and other non-customer related duties such as cleaning out the Clubhouse basement, washing Salah's car and/or general maintenance.

From 2010 to the end of 2015, Defendants failed to maintain any records related to their tip pool.[1]  Thus, for that period, there are no records that reflect how much money the FLSA class paid into the tip pool or how much money Defendants paid out of same.  In late 2015, when Defendants ultimately began keeping records related to their tip pool, Defendants appear to have continued to make payments to staff including Deborah Porcelli ("Porcelli"), the Clubhouse's book keeper, cooks, managers and busboys.  These records were all kept together and Salah, admitted that if they were paying staff out of the tip pool as it appeared, the tip pool itself would be invalidated.

After the close of discovery, Plaintiffs filed a Motion for Final Certification of their FLSA Collective and a Motion to Certify a Rule 23 Class while these Motions were pending, the Court directed that the parties attend a settlement conference with Magistrate Judge Thomas Rutter.  That settlement conference, which initially began in person on September 20, 2019, continued over multiple days with the parties holding weekly phone conferences with the Court over the period of four (4) weeks.  Ultimately, the parties agreed to resolve this matter and did so based upon Defendants' dire financial situation which includes, inter alia: (1) a $2,909,195.03 judgment against Clubhouse Bensalem Holdings, Clubhouse Bensalem LLC and Defendant Salah, (2) over a million dollars in tax liens held against Defendant Salah and his wife in Delaware County, Pennsylvania, (3) in excess of $500,000.00 in tax liens against both the Clubhouse Bensalem LLC and the Clubhouse Bensalem Inc. holding by the Federal Government

---

[1] During discovery, Defendants produced all of their records related to the tip pool.  Those records started in November 2015.  There were no records produced dated before then making it difficult for Plaintiffs to determine how much money was paid into and out of the tip pool.

and the Commonwealth of Pennsylvania in Buck County Pennsylvania, and various other claims and debts made against Defendant Salah and his businesses.[2]

The Parties recognize and acknowledge the benefits of settling this case. Plaintiffs believe the claims asserted in this case have merit and that the information obtained to date supports their claims. Despite the strengths of their case, Plaintiffs also recognize and acknowledge the risks and uncertainty associated with complex litigation, including the risk associated with Defendants' dire financial status, the risk that the alleged class and collective action claims may not ultimately be certified and the difficulty and delays inherent in litigation.[3] Plaintiffs therefore believe that the settlement set forth in the Settlement Agreement is fair, reasonable, adequate and in the best interests of the Collective. Defendants maintain that the claims alleged are not appropriate for conditional or class certification, and that they have a number of meritorious defenses to the claims asserted in this action. Specifically, Defendants believe that they compensated the class members, and all employees, fairly and in accordance with applicable Federal and State law and that its policies and procedures are compliant with legal requirements and fair to employees. Nevertheless, Defendants believe that the significant expense associated with defending class actions, the costs of any appeals, and the disruption to their business operations arising out of class action litigation outweigh proceeding to defend Plaintiffs' claims in litigation. As such, Defendants agree with and recommend the proposed settlement to this Court.

---

[2] In 2018, Defendant Salah pleaded guilty to a felony Count of willfully evading taxes. As part of that criminal conviction, Salah was required to pay restitution to the Federal Government.

[3] Since filing this action, one of the named Plaintiffs and one of the Opt In Plaintiffs have been diagnosed with cancer.

## II.     PROPOSED SETTLEMENT

The Parties' proposed settlement is intended to resolve all claims for unpaid wages, overtime, gratuities or other compensation, attorney's fees and costs, liquidated damages, penalties, and all other relief under the FLSA and all other state and local wage, hour, and wage payment laws and common law theories.  This settlement will entitle all people who worked as a waiter or waitress at the Clubhouse between October 30, 2011 and August 18, 2013 (the "First Class") and who opted-in to participate and claim a benefit. A copy of the Settlement Agreement is attached hereto as Exhibit "1."  This settlement will also allow waiters and waitresses who worked at the Clubhouse from August 19, 2013 until the date the Court conditionally certified this matter as a Collective Action (the "Second Class") who opted-in to potentially participate and claim a benefit.  The Parties have stipulated that the two (2) settlement classes satisfy the requirements for final FLSA certification for settlement purposes.[4] See Exhibit "1".  A copy of the Declaration of Edward J. Murphy, Esquire is attached hereto as Exhibit "2."

Pursuant to the Settlement Agreement, Defendants have agreed to pay the following components, each subject to Court approval:  (1) a total of $30,000.00 to resolve Plaintiffs FLSA claims including, $2,000.00 in enhancement awards to the three named Plaintiffs; $1,000.00 in enhancement awards to Faith Carter and Theresa Szukalski; $10,000.00 in attorney's fees; $5,000 in costs; and  the remaining $7,000.00 to be paid out to the nine (9) class members based upon their pro rata share of hours worked and (2) Defendant Clubhouse Bensalem Holding, Inc.

---

[4] The First Class is defined as "all current and former servers, waiters, and waitresses employed by defendants at any time between November 7, 2010 and August 18, 2013, who, during that period, were required to contribute their tips to a 'tip pool' from which defendants retained a share for themselves, and/or paid employees not customarily entitled to tips and who opted-in to this matter.  Without liquidated damages, the total amount of wages owed to the First Class would be approximately $54,000.  The Second Class is defined as "All current and former servers, waiters, and waitresses employed by defendants at any time between August 19, 2013 and March 30, 2016, who, during that period, were required to contribute their tips to a 'tip pool' from which defendants retained a share for themselves, and/or paid employees not customarily entitled to tips who opted-in to this matter.  Without liquidated damages, the total amount of wages owed to the Second Class would be approximately $85,000.00.

6

has consented to a judgment in the amount of $85,000.00 for the Second Class which if ever satisfied will be paid a pro rata share to each class member, less attorney's fees and costs which Plaintiffs' Counsel is reducing to 25% to maximize the Second Classes' potential recovery. Id. A copy of the Consent Judgment is attached hereto as Exhibit "3." In exchange, the Class Members will release Defendants from any and all claims that were or could have been brought based on the facts alleged in the Complaint, including all claims relating to overtime pay, minimum wages, penalties, liquidated damages, attorney's fees and expenses flowing from the conduct alleged in the Complaint. Exhibit "1." The Class Member settlement awards will be paid as 1099 income interest, liquidated damages, and/or penalties (no withholding). Id. Approximately 14 Class Members will be entitled to claim payments from the settlement should Clubhouse Bensalem LLC and the Clubhouse Bensalem Inc. ever satisfy the consent judgment.

Defendants will contribute the funds necessary to satisfy the FLSA claims of all First Class Members over a fifteen (15) month period. Id. Any returned or un-cashed checks issued to Settlement Class Members shall be distributed back to the Class on a pro rata basis after a 120-day acceptance period. Id. In consideration for the payments they receive, the Settlement Class Members will release Defendants from any and all claims that were or could have been brought based on the facts alleged in the Amended Complaint, including all claims relating to overtime pay, minimum wages, penalties, liquidated damages, attorney's fees and expenses flowing from the conduct alleged in the Complaint. Id.

Defendants agree with the incentive payment and believes it to be a fair part of this settlement. Incentive awards are not uncommon in class action cases and are within the discretion of the court. In calculating incentive fees, courts consider:

> the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the

7

> time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.

Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y.1997) (citing Yap v. Sumitomo Corp. of America, 1991 WL 29112 (S.D.N.Y.1991); Green v. Battery Park City Auth., 1987 WL 11698 (S.D.N.Y.1987); Block v. Revlon, 1985 WL 56614, 37 Fair Empl. Cas. (BNA) 1327 (S.D.N.Y.1985); Wire Serv. Guild v. Associated Press, No. 78-4502, No. 790991, slip op. (S.D.N.Y.1983)).

In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers. Su v. Electronic Arts, Inc., 2006 WL 4792780 No. 6:05-cv-131-Orl-28JGG (M.D.Fla. 2006); See also Roberts v. Texaco, Inc., 979 F. Supp. at 201 (citations omitted); see also Women's Comm. for Equal Employment Opportunity v. National Broad. Co., 76 F.R.D. at 182 ("plaintiffs here ... undertook significant obligations, perhaps at some risk to job security and good will with co-workers, resulting in broad-ranging benefits to the class"); Lepinske v. Mercedes Homes, Inc., 6:07-cv-915-Orl-31DAB (July 7, 2008). In this case, in addition to the named Plaintiffs, Faith Carter and Theresa Szukalski have provided significant information, statements to counsel and agreed to provide testimony and declarations. Likewise, the named Plaintiffs sat for depositions and provided detailed information related to their employment with Defendants including the operation of Defendants tip pool, the names of busboys, their daily duties and how Defendants payroll practices worked.

### III.  ARGUMENT

#### A.  The Court Should Approve The Settlement

The relevant factors at second-stage FLSA certification include: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." Adami v. Cardo Windows, Inc., 2016 U.S. Dist. LEXIS 42152, *17, 2016 WL 1241798 citing Zavala v. Wal-Mart Stores Inc., 691 F.3d 527, 536-37 (3d Cir. 2012).  These considerations are all met in this case.

As described throughout the pleadings and confirmed by the documents and data produced in discovery, Plaintiffs contend that all FLSA Collective members worked as waiters and waitresses and under similar terms and conditions of employment, specifically with respect to their tip pool contributions.  Plaintiffs contend that final FLSA certification is warranted because the FLSA Collective members worked for Defendants at the same restaurant, in the same position; on similar schedules and shifts; for the same wages (i.e., $2.83 per hour plus tips); and under similar terms and conditions of employment (i.e., under the same overtime and tip pool requirements). Id.

These alleged facts, considered alongside the discussion of the class certification requirements, above, support granting final FLSA certification to the FLSA Settlement Collective for settlement purposes. See Irvine v. Destination Wild Dunes Mgmt., Inc., 204 F. Supp. 3d 846, 848 (D.S.C. 2016) (granting final FLSA certification to restaurant servers, finding "the factual circumstances underlying the claims of Opt-In Plaintiffs are more similar than disparate"); Castillo v. Morales, Inc., 2015 WL 13021899, *3 (S.D. Ohio Dec. 22, 2015) (granting final FLSA certification to claims of all restaurant servers).  In this case, Defendants

9

financial situation presented an impediment to the continued prosecution of this matter. Specifically, at this time, Defendants have had $2.9 Million judgment entered against them, Defendants Salah and the Clubhouse also have millions of dollars in tax liens entered against them and they are being sued or have been threated to be sued by a number of their vendors. Thus, there is a distinct possibility that Defendants will enter into bankruptcy.

**B.      Legal Standard Governing Final Settlement Approval**

Generally, settlements are favored in the class action context. Rosenau v. Unifund Corp., 646 F. Supp. 2d 743, 751 (E.D. Pa. 2009). As the Third Circuit Court of Appeals has observed: "there is an overriding public interest in settling class action litigation." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004); Moore v. Comcast Corporation, 2011 U.S. Dist. LEXIS 6929, *7 (E.D. Pa. Jan. 24, 2011) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years").

Claims arising under the FLSA can be settled or compromised by employees when either the Secretary of Labor supervises an employer's payment of unpaid wages to employees pursuant to 29 U.S.C. § 216(c), or a district court approves the settlement pursuant to 29 U.S.C. § 216(b). Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012). Once parties present the district court with a proposed settlement under § 216(b), "the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" Id. (quoting Lynn's Food Stores Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)). Although the Third Circuit has not yet specifically addressed what factors district courts should consider in evaluating settlement

agreements under the FLSA, district courts in this circuit have referred to the considerations set forth in Lynn's Food Stores. Brown v. TrueBlue, Inc., No. 10-514, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013); Dino v. Pennsylvania, No. 08-1493, 2013 WL 4041681, at *4 (M.D. Pa. Aug. 8, 2013).

Under Lynn's Food Stores, a district court may find that a proposed settlement agreement resolves a bona fide dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute." 679 F.2d at 1354. "In scrutinizing the agreement for reasonableness and fairness, courts generally proceed in two steps, first considering whether the agreement is fair and reasonable to the plaintiff-employees and, if found to be fair and reasonable, then considering whether it furthers or 'impermissibly frustrates' the implementation of the FLSA in the workplace." Dino, 2013 WL 4041681, at *3 (quoting Brumley v. Camin Cargo Control, Inc., No. 08-1798, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2013)); see Brown, 2013 WL 5408575, at *1.

### C. The Settlement Is Entitled To A Presumption Of Fairness

In reviewing a settlement for final approval, the trial court should apply an initial presumption of fairness where: 1) the settlement negotiations occurred at arm's length; 2) there was sufficient discovery; the proponents of the settlement are experienced in similar litigation; and only a small fraction of the class objected. Carroll v. Stettler, 2011 U.S. Dist. LEXIS 121185, *13 (E.D. Pa. Oct. 19, 2011), citing In re Warfarin Sodium, 391 F.3d at 535.  The Parties' proposed settlement of this lawsuit is entitled to an initial presumption of fairness because it meets all four of these criteria.

First, the Parties' Settlement Agreement is the result of extensive arm's-length negotiations accomplished over multiple settlement conferences sessions and with the help of

11

Magistrate Judge Rutter. <u>See</u> Exhibit "2." These facts demonstrate the arm's-length nature of the settlement and the absence of collusion in the settlement negotiations. Second, the Parties' Settlement negotiations were informed by years of discovery that included multiple rounds of requests and responses by Defendants and the production of extensive timekeeping and payroll data for the both settlement classes as well as thousands of pages of personnel and employment records, communications, employment dates, rates of pay and work assignments. <u>Id</u>. This production and the multiple depositions taken in this matter permitted an assessment of the proper shape of the Class and an in-depth analysis of the strengths, weaknesses and risks inherent to the Parties' respective positions that supports an initial presumption of fairness. Third, Plaintiffs were represented by counsel experienced in similar litigation. Finally, many former staff members at the Clubhouse have returned a completed opt in forms and none have sought exclusion from the Class. Thus, the settlement in this matter is reasonable and fair.

### D.     **The Settlement Falls Within The "Range Of Reasonableness"**

After determining application of the initial presumption of fairness, courts in this Circuit typically consider whether the proposed settlement is fair, reasonable and adequate under the nine factors identified in <u>Girsh v. Jepson</u>, 521 F.2d 153, 157 (3d Cir. 1975), namely:

> 1. The complexity, expense and likely duration of the litigation; 2. The reaction of the class to the settlement; 3. The stage of the proceedings and the amount of discovery completed; 4. The risks of establishing liability; 5. The risks of establishing damages; 6. The risks of maintaining the class action through the trial; 7. The ability of the defendants to withstand a greater judgment; 8. The range of reasonableness of the settlement fund in light of the best possible recovery; and 9. The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

<u>Carroll</u>, 2011 U.S. Dist. LEXIS 121185 at *14-15. This Court should approve the Parties' proposed settlement because, as discussed below, all of the Girsh factors either weigh in favor of approval, or do not suggest that the settlement is unfair.

1.   **The Settlement Is Fair, Reasonable And Adequate In Light Of The Complexity, Expense, and Likely Duration Of The Litigation**

The first Girsh factor requires consideration of "the probable cost, in both time and money, of continued litigation" to determine the degree to which the class would benefit from settling the class claims amicably. Frederick v. Range Res.-Appalachia, LLC, 2011 U.S. Dist. LEXIS 27350 (W.D. Pa. Mar. 17, 2011), citing Erie County Retirees Ass'n, v. County of Erie, 192 F. Supp. 2d 369, 373 (W.D. Pa. 2002).  Absent a negotiated settlement, this case would likely have proceeded to class-wide merits and damages discovery which would likely have involved, from Plaintiffs, several dozen written discovery responses and depositions, and from Defendants, written discovery and depositions from each of the individual Defendants plus further discovery and depositions from managers and Plaintiffs followed by summary judgment and trial.  Further, because Defendants business is in financial distress and due to financial constraints, this matter would likely have been drawn out well into 2020, or beyond, with substantial fees and costs expended on both sides and little certainty in the result. Id. at ¶ 10. Thus, the complexity, expense, and likely duration of the litigation support a finding that the Parties' proposed settlement is fair, reasonable and adequate. Carroll, 2011 U.S. Dist. LEXIS 121185 at *15-16.

2.   **The Settlement Is Fair, Reasonable And Adequate In Light Of The Overwhelmingly Favorable Reaction Of The Class To The Settlement**

The second Girsh factor "attempts to gauge whether members of the Class support the settlement." Carroll, 2011 U.S. Dist. LEXIS 121185 at *16.  To measure the class's reaction to the terms of a settlement, courts consider the "number and vociferousness" of the objectors. Benjamin v. Dep't of Pub., 2011 U.S. Dist. LEXIS 99044, 13-14 (M.D. Pa. Sept. 2, 2011), citing General Motors Pick-Up Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 812 (1995).  To date, no one

13

has asked to be excluded from the Class or raised any objection to the proposed settlement and Plaintiffs' counsel has spoken to a number of the Opt Ins who believe the settlement is fair given Defendants' financial situation. This positive response demonstrates that the Parties' proposed settlement is fair, reasonable and adequate. In Re Prudential Insurance Company of America Sales Litigation, 148 F.3d 283, 318 (3d Cir. 1998) (affirming settlement approval for 8 million class members with 300 objectors and 19,000 optouts; Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990) (affirming settlement approval for 281 class members with 29 objectors).

### 3. The Settlement Is Fair, Reasonable And Adequate In Light Of The Stage Of The Proceedings And The Amount Of Discovery Completed

The third Girsh factor tests whether Class Counsel had an adequate appreciation of the merits of the case before negotiating the proposed settlement. In re General Motors Corp. PickUp Trucks Fuel Tank Prod. Liab. Litig., 55 F.3d at 813. The Parties spent years participating in multiple rounds of discovery to inform their various arguments and responses. Before and after each of their settlement attempts in September 2019, the Parties engaged in a cooperative effort to identify key issues and collect, exchange and evaluate discovery to inform their positions, including on the value of Plaintiffs' claims. See Exhibit "2." The Parties leaned heavily on these efforts, and on the input of Magistrate Judge Thomas Rueter in reaching a fair and reasonable settlement that provides adequate relief to the Settlement Class members. Id. Carroll, 2011 U.S. Dist. LEXIS 121185 at *18.

### 4. The Settlement Is Fair, Reasonable And Adequate In Light Of The Risks Of Establishing Liability And Damages

The fourth and fifth Girsh factors "require the Court to examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the

claims rather than settle them." Carroll, 2011 U.S. Dist. LEXIS 121185, *18-19, citing In re General Motors Corp. Pick-Up Trucks Fuel Tank Prod. Liab. Litig., 55 F.3d at 814.  As at least one court has observed, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." In re Chambers Dev. Sec. Litig., 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Here, Plaintiffs believe they have presented a strong case that Defendants operated an illegal tip pool.  As a result, Plaintiffs are confident that the legal claims at the heart of their Complaint would have survived summary judgment.  Defendants, however, both disputed their maintenance of an illegal tip pool and contend that they paid staff appropriately.  Similarly, Defendants dire financial condition calls into question whether there would have been any recovery if Plaintiffs actively persisted.  Accordingly, Plaintiffs recognize they might not have prevailed on a contested class certification motion if the Court found, for example, that issues common to the putative Classes were overwhelmed by issues relating to individual Settlement Class members' particular circumstances and, because of recordkeeping issues, may have been unable to trace the payment and distribution of tip pool funds to establish a clear violation. Because of the disparity between their litigation positions, both Parties would have faced substantial risk and uncertainty if this litigation had continued, including the significant expense associated with prosecuting and defending these claims, and any appeals, and the disruption to their lives and continuing business operations. Accordingly, without conceding any adverse conclusions would be correct or appropriate, both Parties believe that the Settlement set forth in the Agreement is in their best interests.  This situation demonstrates that the Parties' proposed settlement is fair, reasonable and adequate in light of the material risks associated with continued litigation.

### 5. The Settlement Is Fair, Reasonable And Adequate In Light Of The Risks Plaintiffs Would Face In Maintaining The Class Action Through Trial

The sixth Girsh factor requires the court to consider of the risks of maintaining the class action through trial. <u>Frederick</u>, 2011 U.S. Dist. LEXIS 27350 at *18-19. This factor weighs in favor of settlement where a risk exists that the class action device may become unmanageable at some point prior to trial, creating the possibility of decertification. <u>Id</u>., <u>citing</u> <u>In re Prudential</u>, 148 F.3d at 321. Here, Defendants argued that Plaintiffs faced a serious risk of decertification because the Court would have to engage in an individual inquiry to assess their claims. Under these circumstances, this Girsh factor supports approval of the proposed settlement. <u>Carroll</u>, 2011 U.S. Dist. LEXIS 121185, *19-20. In any event, the Third Circuit has opined that this Girsh factor "may not be significant" in settlement-only class actions. <u>Frederick</u>, 2011 U.S. Dist. LEXIS 27350 at *18-19, <u>citing</u> <u>In re Prudential</u>, 148 F.3d at 321.

### 6. The Settlement Is Fair, Reasonable And Adequate In Light Of Defendants' Ability To Withstand A Greater Judgment

The subject of Defendants' inability to satisfy a significant judgment arose during the Parties' settlement negotiations. Defendants produced extensive discovery into their individual and corporate financial holdings, including multiple years of financial records for all of the corporate entities controlling the Clubhouse, to support their inability to pay a judgment reflecting the full value of Plaintiffs' claims. <u>See</u> Exhibit "2." There is also a good deal of publically available information related to other liens and judgments against Defendant Salah and the Clubhouse including an 2.9 million dollar judgment by Bryn Mawr Trust and millions of dollars in federal and state tax liens against Salah and his businesses. Based on this information, Plaintiffs had little choice but to accept Defendants' poverty claim and abandon hopes of securing a materially larger judgment. <u>Id</u>. As a result, it would be reasonable for this Court to

find that this Girsh factor either weighs in favor of the proposed settlement or, at least, does not significantly impact its analysis. In re Cigna Corp. Sec. Litig., 2007 U.S. Dist. LEXIS 51089, *13 (n.3) (E.D. Pa. July 13, 2007) ("Even if we were to assume that the seventh Girsh factor – the defendant's ability to withstand a greater judgment – suggests we reject the settlement, this factor alone does not outweigh all the others"); In re Vicuron Pharms., Inc. Secs. Litig., 512 F. Supp. 2d 279, 286 (E.D. Pa. 2007).

### 7. The Settlement Is Fair, Reasonable And Adequate In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation

The eighth Girsh factor addresses whether a proposed settlement is fair in light of the best possible recovery. In this litigation, Plaintiffs claim that Defendants operated an illegal tip pool by utilizing tip pool money to pay wages to individuals not entitled to tips. Defendants, however, did not maintain contemporaneous records of these payments until late 2015. Id. Based on evidence from individual records Defendants provided (i.e., the number of waiters and waitresses, employment duration, shifts and hours worked and wages paid), Plaintiffs calculated the maximum value of their claims at approximately $39,000.00 for the First Class Period and $85,000.00 for the Second Class Period. See Exhibit "2." Defendants not only contested this calculation but, as noted above, advanced convincing proof of their inability to pay a judgment reflecting the maximum value of Plaintiffs' claims. Id. Acknowledging Defendants' demonstrated poverty claim and the substantial risk that Defendants would be unable to bear a larger financial burden, the Parties ultimately agreed to a settlement that represents about large percentage of the maximum value of Plaintiffs' claims.

### E. The Attorney's Fees Are Reasonable Under The Circumstances

Under § 216(b), the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

29 U.S.C. § 216(b). In FLSA cases, judicial approval of attorneys' fees is necessary "'to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" Brumley, 2012 WL 1019337, at *9 (quoting Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009)). The court "must articulate the basis for a fee award." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001). Here, the recovery of attorneys' fees does not create a conflict of interest that affects Plaintiffs' ultimate recovery and the amount of attorneys' fees was negotiated at arm's length and constitutes a fraction of the amount of work done in this matter. Further, the attorney's fees are only being paid after the Class is paid and are based partly on Defendants' financial condition. Thus, the amount of attorneys' fees could not have affected the amount of Plaintiffs' recovery and Counsel are reducing their fee associated with the Consent Judgment so as to maximize the Class' recovery assuming that Defendants satisfy the judgment against them.

The remaining issue is whether the requested attorneys' fees is reasonable. In FLSA cases, both the "lodestar" formula and the percentage-of-recovery method have been used in evaluating the reasonableness of attorneys' fees. See Loughner, 260 F.3d at 177 (using "lodestar" formula); Brumley, 2012 WL 1019337, at *9 (using percentage-of-recovery method). To determine what is reasonable under the lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." Loughner, 260 F.3d at 177. The percentage-of-recovery method, on the other hand, allows a district judge to award attorneys' fees as a percentage of the total fund recovered. In re Gen. Motors Corp. Pick-Up Fuel Tank Products Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995). Fee awards have ranged from 19 percent to 45 percent of the settlement fund. Id.; see also Brumley, 2012 WL 1019337, at *12 (collecting cases where attorneys' fees around 30 percent of settlement funds were found reasonable). In

this case, the Proposed Agreement states that the parties stipulate and agree that the requested $10,000.00 and $5,000.00 in costs.  The amount of requested attorney's fees represents a third of the total recovery by Plaintiffs and Plaintiffs' counsel has agreed to lower its fee on the consent judgment to 25 percent of any recovery.  Furthermore, Plaintiffs' Counsel have expended a considerable number of hours prosecuting this matter and are well aware of Defendants' financial situation.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully requests that the Court enter an Order granting final approval of the settlement and dismissal of the case with prejudice.

Respectfully submitted,

MURPHY & ASSOCIATES

BY:   s/Edward J. Murphy, Jr., Esquire
PATRICK G. MURPHY, ESQUIRE
ATTY. I.D. NO. 34815
EDWARD J. MURPHY, JR., ESQUIRE
ATTY. I.D. NO. 91814
640 SENTRY PARKWAY, SUITE 100
BLUE BELL, PA 19422
(215) 643-6500

Date:   October 31, 2019

## **CERTIFICATE OF SERVICE**

I, Edward J. Murphy, Jr., Esquire, hereby certify that on October 31, 2019 I caused a copy of Plaintiffs' Memorandum of Law in Support of Their Unopposed Motion for Collective Action Settlement Approval to be served upon the following person via electronic case filing:

>John F. Innelli, Esquire
>John F. Innelli, LLC
>Two Penn Center, Suite 1300
>Philadelphia PA  19102


BY:   s/Edward J. Murphy, Jr., Esquire
      EDWARD J. MURPHY, JR., ESQUIRE
      Attorney for Plaintiffs